LACQUER & CHEMICAL CORPORATION v. MILLS, Federal Prohibition Administrator, et al.

SHEPARD v. SAME.

District Court, E. D. New York. January 18, 1927.

Constitutional law ⬥318—Intoxicating liquors ⬥122—Regulations of Commissioner may change kind of denatured alcohol that may be withdrawn without depriving permittee of property without due process (Prohibition Act, tit. 3, § 13 [27 USCA § 83]).

Withdrawal of special denatured alcohol for manufacturing purposes by a permittee is subject to regulations made by the commissioner "from time to time," under Prohibition Act, tit. 3, § 13 (27 USCA § 83), and while he cannot by such regulations revoke a permit, he may change the kind of alcohol to be withdrawn thereunder, provided the regulation is reasonable, in view of the use for which the withdrawal is made, and such change does not violate the due process clause.

Order affirmed 22 F.(2d) 700.

Lewis Landes, of New York City, for plaintiffs.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y., and Morris Packer, Asst. U. S. Atty., of New York City, for defendants.

CAMPBELL, District Judge. These cases come before the court on the return of orders directing the defendants to show cause why they should not be restrained, pending the determination of the issues in these cases, from prohibiting the plaintiffs to withdraw specially denatured alcohol, formula 3–A, in conjunction with its business and in conformity with its permit, which order in the first above entitled case stayed and restrained the defendants and their attorneys from taking any further steps or proceedings relative to Treasury Decision 3941, pending the determination of this motion. There was no stay contained in the order to show cause in the second above entitled case. The two cases were argued together, the question being the same, and one opinion will suffice.

The plaintiff Lacquer Chemical Corporation is a manufacturer of enamel lacquers and thinners. On or about the 7th day of February, 1925, the plaintiff Lacquer Chemical Corporation, in accordance with the provisions of the Act of Congress of October 28, 1919, and known as the National Prohibition Act (27 USCA), obtained from the proper authorities, in accordance with the Rules and Regulations theretofore prescribed by the Commissioner of Internal Revenue, and with the approval of the Secretary of the Treasury of the United States of America, a permit to use specially denatured alcohol, formula 3–A, in the business of manufacturing, which it conducted, and for use in its products, namely, in enamels, lacquers, and thinners. From the date of the issuance of said permit the said plaintiff has been using formula 3–A in such manufacture of its enamels, lacquers, and thinners.

The plaintiff Bernard J. Shepard is a manufacturer of white shellacs, orange shellacs, spirit varnishes, etc. On or about De-

cember 21, 1924, the plaintiff, in accordance with the provisions of the Act of Congress of October 28, 1919, and known as the National Prohibition Act, obtained from the proper authorities, in accordance with the Rules and Regulations theretofore prescribed by the Commissioner of Internal Revenue, and with the approval of the Secretary of the Treasury of the United States of America, a permit to use specially denatured alcohol, formula 3–A, in the business of manufacturing, which he conducted, and for use in its products, namely, in white shellacs, orange shellacs, spirit varnishes, lacquers, etc. From the date of the issuance of said permit the said plaintiff has been using formula 3–A in said manufacture of his white shellacs, orange shellacs, spirit varnishes, lacquers, etc.

On November 29, 1926, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated Treasury Decision 3941, which reads as follows: "Effective thirty days from date hereof, specially denatured alcohol, formula 3–A, may no longer be withdrawn for use in the manufacture of varnishes, lacquers, stains, polishes, disinfectants, and liquid soaps, other than toilet soaps. On and after the date hereof, no new basic permits for the use of specially denatured alcohol, formula 3–A, in the manufacture of the above-mentioned products will be granted. Specially denatured alcohol, formula No. 1, may be approved by the administrators for use in any of the above-mentioned articles for which specially denatured alcohol, formula 3–A, has been heretofore approved."

Plaintiffs contend that no question of fact is presented by these motions, but simply a question of law. As I view the question, it is whether Treasury Decision 3941 revokes the permits of the plaintiffs and all other permits, where the permittees were allowed to purchase and use formula 3–A, or simply regulates the kind of denatured alcohol to be used by plaintiffs and the said other permittees by substituting formula 1 for formula 3–A.

Section 9 of Title 2 of the National Prohibition Act (27 USCA § 21) applies to permits of the character of those held by plaintiffs (Higgins v. Foster et al. [C. C. A.] 12 F.[2d] 646), and under the section such permits could not be revoked, except after a hearing, a copy of the citation to attend, which, together with a copy of the complaint or statement of the facts upon which such proceedings were based, must have been served upon the plaintiffs not less than 15 nor more than 30 days before the date of such hearing.

Section 5 of title 2 of the National Prohibition Act (27 USCA § 14) likewise provides a method of revoking a permit when the Commissioner has reason to believe that the article produced and mentioned in section 4, title 2, of that act (27 USCA § 13), does not correspond with the descriptions and limitations therein provided, under which method not less than 15 days' notice is required to be given to the permittee. It does not seem that section 5 would apply, because the product of the plaintiffs' manufacture is not enumerated in section 4, unless it be included in subdivision (a) of that section.

No proceedings were taken to revoke the plaintiffs' permits, or either of them, under either sections 5 or 9, and if Treasury Decision 3941 be held to revoke plaintiffs' permits, then it cannot be sustained as a proper regulation. Higgins v. Foster et al., supra. The power to regulate the distribution and use of denatured alcohol in manufacturing is given to the Commissioner of Internal Revenue in very broad terms by section 13, title 3, of the National Prohibition Act, which reads as follows:

"The Commissioner shall from time to time issue regulations respecting the establishment, bonding, and operation of industrial alcohol plants, denaturing plants, and bonded warehouses authorized herein, and the distribution, sale, export, and use of alcohol which may be necessary, advisable, or proper, to secure the revenue, to prevent diversion of the alcohol to illegal uses, and to place the nonbeverage alcohol industry and other industries using such alcohol as a chemical raw material or for other lawful purpose upon the highest possible plane of scientific and commercial efficiency consistent with the interests of the government, and which shall insure an ample supply of such alcohol and promote its use in scientific research and the development of fuels, dyes, and other lawful products." 27 USCA § 83.

This was not a new power, because the power to make regulations for the control of the denaturing and withdrawal of such alcohol had been conferred upon the Commissioner by Congress as early as 1906, by the Act of June 7 of that year, 34 Stat. 217, in section 1 of which act it is, among other things, provided as follows:

"The character and quantity of the said denaturing material and the conditions upon which said alcohol may be withdrawn free of tax shall be prescribed by the Commissioner of Internal Revenue, who shall, with

the approval of the Secretary of the Treasury, make all necessary regulations for carrying into effect the provisions of this act." 26 USCA § 481; Comp. St. § 6132.

The next act providing for denaturing alcohol was the Act of October 3, 1913, 38 Stat. 199, which provides for the denaturation of alcohol by farmers and fruit growers, and subsection 2, paragraph (n), of section 4, which in part reads as follows: "By an admixture of such denaturing materials as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may prescribe." 26 USCA § 487; Comp. St. § 6137.

That denatured alcohol manufactured and used was to conform to regulations appears from subdivision (a) of section 4 of title 2 of the National Prohibition Act, which reads as follows: "Denatured alcohol or denatured rum produced and used as provided by laws and regulations now or hereafter in force." 27 USCA § 13.

From the laws as quoted it appears that the Commissioner of Internal Revenue did not exhaust his power by makig the regulation under which the plaintiffs were allowed to purchase for use in their manufacturing formula 3–A, but that the power to change such regulation continued because, under section 13, title 3, of the National Prohibition Act, the Commissioner had power to issue regulations "from time to time," and under section 4 of title 2 of that act the production and use of denatured alcohol was to be "as provided by laws and regulations now or hereafter in force." Nowhere in the law is there provided any formula for denaturing alcohol, but the duty is cast upon the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make from time to time rules and regulations covering this subject.

Plaintiffs contend that the Commissioner of Internal Revenue has no power, except in the manner provided in section 5, title 2, of the National Prohibition Act, to deprive the plaintiffs of the use of formula 3–A in the manufacture of their products, and that the requirement to use formula 1 in lieu thereof in effect deprives the plaintiffs of property without due process of law and is in violation of their constitutional rights. This contention cannot be sustained, first, because there is no showing of any claim made by the Commissioner or any one else that the plaintiffs' products do not comply with the descriptions and limitations provided in section 4 of the National Prohibition Act, nor has the Com-

missioner attempted to revoke the plaintiffs' permits on any ground whatever.

The permit issued by the Commissioner is in no sense a contract; it is exactly what it is called, a permit, and the power to make regulations contained in the act is not a power to be once exercised, and then lost forever, but it is a power to make regulations from time to time as the necessities may arise. The regulations made by the Commissioner, however, must be in harmony with the act, and not in contravention of it.

Under the National Prohibition Act, the terms of the permits for using denatured alcohol are not limited as to time, and therefore the Commissioner cannot by regulation limit the time, and such permits can only be revoked in the manner provided in the law, and this is true, whether it be applied to one permit or all permits (Higgins v. Foster, supra); but in my opinion the case at bar is clearly distinguishable from that case, in that there is no attempt made here to revoke the permits, and there is no provision in the law as to how alcohol is to be denatured, but that is left to the Commissioner to be provided for by regulations that shall be made from time to time.

To hold, as plaintiffs contend, that the Commissioner, having once given a permit to use one formula, can never change that formula without revoking the permit, seems to be contrary to the intent of Congress as expressed in section 13, title 3, of the National Prohibition Act, supra, when it directed the Commissioner "to place the nonbeverage alcohol industry and other industries using such alcohol as a chemical raw material, or for other lawful purpose, upon the highest possible plane of scientific and commercial efficiency consistent with the interests of the government," because it is impossible to conceive of keeping the business on the highest possible plane, if no changes can be made in formulæ, but each permittee must go on forever using the same formula of denatured alcohol; and, further, the Congress realized that the interests of the government might not always be the same, as the Commissioner was given by that section power to make regulation from time to time.

Of course the regulation must be a reasonable one, and the Commissioner could not, under the guise of a regulation, in reality deprive the plaintiffs of the opportunity to manufacture their products, and that would not be permitted by this court. But that is not what the Commissioner has done by Treasury Decision 3941. What he has done

is, not to reduce the quantity plaintiffs may withdraw, but simply to substitute for formula 3–A the formula 1, which on the showing made on this motion is not unreasonable, and for the purpose of this motion I cannot hold formula 1 to be unsuitable for plaintiffs' purposes. Treasury Decision 3941 does not revoke plaintiffs' permit in whole or in part, but is simply a reasonable regulation, promulgated by the Commissioner of Internal Revenue, pursuant to the power conferred on him by law.

The motion in the first above entitled action is denied, and the temporary stay vacated. The motion in the second above entitled action is denied. Settle orders on notice.

The question here presented is of importance, and, if the plaintiffs desire in good faith to appeal, and to prosecute their appeals with expedition, the defendants and their attorneys in each of the above-entitled actions will, on the giving by plaintiffs of bonds in the sum of $2,500 each, to be approved by a judge of this court, be stayed and restrained from taking any further steps or proceedings relative to Treasury Decision 3941 pending the decision of the appeal, reserving to the defendants the right to move to vacate such stay, if plaintiffs, or either of them, fail to prosecute such appeal with due diligence.